IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Roger Cleland,                          :
                    Plaintiff          :      Civil Action 2:10-cv-1165

        v.                              :      Judge Graham

Michael J. Astrue,                      :      Magistrate Judge Abel
Commissioner of Social Security,
                    Defendant          :

## REPORT AND RECOMMENDATION

Plaintiff Roger Cleland brings this action under 42 U.S.C. §§405(g) for review of a

final decision of the Commissioner of Social Security denying his application for

Disability Insurance  benefits.  This matter is before the  Magistrate Judge for a report

and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Mr. Cleland was born on June 25, 1960, and he was 45 years

old at the time he alleges he became disabled. He has an eighth grade education and a

GED. He has worked as a maintenance repair person, which was a skilled job and

performed at the heavy exertional level.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- Plaintiff meets or equals Listing 1.4(A);
- The administrative law judge failed to include the treating physician's
  limitations in his hypothetical question to the vocational expert; and
- A subsequent finding of disability is new and material evidence warranting
  remand.

**Procedural History.**  Plaintiff Roger Cleland filed his application for disability insurance benefits on May 29, 2007, alleging that he became disabled on December 13, 2005, at age 45, by a back injury, ruptured eardrum, high blood pressure, high cholesterol, head tremor, and serious back pain and shooting pain into his left leg.  (R. 113, 136.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On February 23, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 23.)  A vocational expert and a medical advisor also testified.  On March 24, 2010, the administrative law judge issued a decision finding that Cleland was not disabled within the meaning of the Act.  (R. 8-18.)  On November 12, 2010, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Roger Cleland was born  June 25, 1960. (R. 113.) He completed the eighth grade and has a GED. (R. 142.)  He has worked as repair person and manager of apartments.  He last worked December 13, 2005.  (R. 137.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Cleland's testimony as follows:

> The claimant testified he was 49 years old, he was 5 feet 9½ inches tall, and he weighed 225 pounds. He has chronic pain, lumbar fusion surgery which was reinjured, high blood pressure, dysthymic disorder, crying spells, and fatigue. He has an 8th grade education and earned his GED. He has not worked since December 13, 2006. He was a manager and

maintenance person for an apartment complex. His wife managed the property and he did all the maintenance. Before that job he worked in construction.

The claimant testified his worst problem is his back. He had surgery in 1986, and went back to work successfully. In December of 2005, he slipped and fell on the ice and reinjured his back. He has pain in his low back that shoots down his left leg. The back pain is constant, but the leg pain comes and goes. With his medication, his back pain is usually a 7 or 8 out of 10 in severity. He has worse days a couple of times a month, usually due to the weather. Sitting or standing for too long triggers the pain. His bad days sometimes last a couple of days at a time, during which he cannot do anything at all and he cannot get comfortable. He is supposed to get another surgery on his back which had to be rescheduled to attend the hearing. He has been taking pain medication and is reluctant to get surgery. He really can't afford it. He takes Percocet for his pain, and he takes Valium once in awhile. He tried a TENS unit in 2006 but it didn't really help. He uses a cane daily which was prescribed by his doctor.

The claimant testified he is able to sit for 15 to 20 minutes at a time and he can stand upright for 15 to 20 minutes at a time. He can only walk for 5 or 10 minutes. He is able to walk without his cane but he falls down. He spends half of his day lying in a recliner, which is his most comfortable position. He gets very little exercise. He occasionally lifts a can of vegetables just to keep up the strength in his arm muscles. He is able to mow his lawn using a self-propelled mower, but he is not able to shovel his sidewalk. He has a drivers' license but only drives occasionally to go to doctors' appointments. It is too painful and he has to stop every 15 minutes. He is able to pick up after himself but he does not cook or wash dishes. He can load the dishwasher. He does not do laundry. He used to love working on guns, but he cannot concentrate well enough to finish any projects any more. His concentration is affected by his pain and by his medications. He has not been able to hint or fish or go camping since 2005. He has trouble sleeping because he cannot get comfortable. He uses an adjustable bed.

The claimant testified he has no trouble getting along with people, although his wife tells him he gets agitated with people. His ability to concentrate has decreased.

(R. 13.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

A July 1, 2004 chest x-ray was normal. (R. 206.)

W. Jerry McCloud, M.D. On August 13, 2007, Dr. McCloud, a state agency physician, completed a physical residual functional capacity assessment. (R. 223-30.) Dr. McCloud opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He could stand and/or walk for a total of about 6 hours in an 8-hour day, and he could sit for about 6 hours in an 8-hour day. He was unlimited in his ability to push and or pull.

Dr. McCloud relied on recent exam notes showing complaints of parathesia in his left leg and foot. Recent exams also showed normal curvature of the spine, scar from previous surgery, tenderness on L3, 4, 5, S1 joint. Plaintiff had no paraspinous tenderness or spasm. Straight leg raising was mildly positive on the left side. His motor strength was 4/5 on the left and 5/5 on the right. He walked with a normal gait.

Cleland could occasionally climb ramps or stairs but never ladders, ropes, or scaffolds. He could occasionally stoop. He should avoid all exposure to hazards because of his pain medication. Dr. McCloud concluded that although plaintiff's symptoms were attributable to a medically determinable impairment, the alleged severity and

limitations appeared more than would be expected and were not supported by the totality of medical and non-medical evidence. (R. 223-230.)

Diane Manos, M.D. On February 21, 2008, Dr. Manos, a state agency physician, reviewed the file and the August 13, 2007 assessment, which she affirmed. (R. 259.)

Deborah Wilson, M.D. Dr. Wilson, plaintiff's primary care physician, provided treatment records from August 1, 2005 through December 18, 2009. In 1986, following a fall, plaintiff had surgery for a L5-S1 fusion. (R. 264.) Plaintiff complained of low back pain, which radiated into the left leg. He also complained of tingling and numbness in the left leg. Without medication, Cleland rated his pain as a 10 on a ten-point scale. On physical examination, plaintiff had normal curvature of the spine. There was significant muscle spasm on the left. On palpation of the vertebral spine, there was tenderness on T12-S1 and minimal tenderness on the SI joint. Straight leg raise test was positive on the right at 45 degrees. He had decreased EHL strength on the left. His sensory examination was normal. There was a slight decrease in reflexes on the left ankle. His gait demonstrated that he favored his affected side. Dr. Wilson diagnosed low back pain and hypertension. (R. 265.)

Plaintiff repeatedly complained of low back pain, which radiated into the left leg. (R. 265, 267, 273, 275, 279, 281, 283, 285, 287, 290.) He experienced tingling and numbness in the left leg. (R. 265, 267, 279, 283, 285, 287, 290.) He had muscle spasms (R. 265, 267, 273, 282, 291) and positive straight leg raising on the left. (R. 265, 267, 273, 283, 285, 291.) He also exhibited decreased extensor hallucis longus muscle strength on the

left (R. 265, 291), decreased dorsiflexion (R. 283, 291), decreased left ankle reflexes (R. 265), diminished reflexes bilaterally (R. 282-83), diminished ankle jerks bilaterally (R. 279), and decreased light touch on the left (R. 291). His gait favored his left side. (R. 265, 273, 275, 279, 282, 283, 288, 291.) Being in a prolonged position aggravated his pain. (R. 267.)

On August 16, 2005, Dr. Wilson noted loss of lordosis and significant muscle spasm. On palpation, there was vertebral spine tenderness on L4-S2 and SI joint tenderness on the left. Plaintiff was positive on the left at 30 degrees on straight leg testing. The motor system was normal bilaterally. His sensory exam and reflexes were also normal. His gait was normal with slight deference to the left side. Dr. Wilson diagnosed low back pain, hypertension, hypercholesterolemia, and tremor. (R. 267.)

On November 16, 2005, plaintiff complained of head tremors. Dr. Wilson recommended that he under go an MRI. (R. 269-70.)    A November 25, 2005 MRI of plaintiff's brain revealed no major abnormality. (R. 293.)

On January 27, 2006, plaintiff reported that he had fallen on December 13th. He injured his knee, and his back was worsening. His low back pain was sharp in the midline. He had shooting pain with spasms that were aggravated by movement. He complained of pain radiating into his thigh on the left side.  (R. 273.)  On February 9, 2006, Dr. Wilson noted that plaintiff's knee injury had exacerbated his back pain. The pain radiating into his leg was worse. (R. 275.)  A February 14, 2006 MRI of plaintiff's lumbar spine revealed L4-5 and L5-S1 posterolateral osseous fusions. There was scant

L4-5 retrolosthesis and L5-S1 anteroilisthesis without neural compression. (R. 292.) On April 14, 2006, Dr. Wilson noted that plaintiff's low back pain was back to baseline. (R. 277.)

On April 27, 2007, plaintiff complained of low back pain in the midline with radiating pain down the left leg into his ankle. He also complained of tingling and numbness. Cleland reported that the Percocet is not helping with the pain as much as it used to. He rated his pain as a 10 on a ten-point scale. Plaintiff appeared to be in discomfort. (R. 283.)

On January 14, 2008, plaintiff reported feeling stressed and having difficulty sleeping. (R. 306.)

On May 19, 2009, Dr. Wilson completed a medical source statement concerning plaintiff's physical capacity. Dr. Wilson opined that plaintiff could occasionally lift 25 pounds and frequently carry 10 pounds. Plaintiff could stand and/or walk without interruption for one hour, and he could stand and/or walk for only 4 hours total in an eight-hour day. He could sit without interruption for only one hour and for only a total of 4 hours in an eight hour day. He could rarely or never climb, stoop, crouch, kneel or crawl. He could occasionally balance. Plaintiff could frequently reach, handle feel, push, pull, and perform fine and gross manipulation. Plaintiff requires the option to sit or stand at will. Dr. Wilson indicated that plaintiff experienced severe pain and that he was on a high dose of opioid medication. (R. 298-99.)

On August 28, 2009, plaintiff reported falling after his leg gave out on him and injuring his back. Since the fall, he had experienced a loss of appetite and lost ten pounds. When walking, plaintiff favored his affected side and leaned heavily on his cane. (R. 319.) August 28, 2009 x-rays of his lumbar spine showed evidence of a posterior bony fusion of L5 and S1. There was no loss of vertebral height. The disc spaces were well-maintained. There was a prominent osteophyte identified in the upper endplate of L4. Smaller osteophytes were seen at other levels. There was no evidence of an acute fracture. (R. 321.)

Fred R. Leess, M.D. On May 9, 2006, Dr. Leess evaluated plaintiff for his complaints of persistent stuffiness and pain in his left ear. Dr. Leess was unable to rule out ottitis media or tympanic membrane perforation. (R. 296.)

Adam C. Spies, M.D.  On May 10, 2007, Dr. Spies evaluated plaintiff because of his left-sided hearing loss after rupturing his left typanic membrane. Dr. Spies recommended that plaintiff would benefit from a left tympanoplasty. (R. 294-95.)

Gunwant S, Mallik, M.D. On October 9, 2009, Dr. Mallik saw plaintiff for a consultation. Plaintiff reported a long standing history of low back problems with radiating pain in to the left leg. Following a 1986 fusion at the L5-S1 level, plaintiff did fairly well. More recently, he began having increasing back pain radiating down the posterior and lateral aspect of the left thigh and leg with numbness and tingling in the ankle. He takes up to ten Percocet a day. He recently fallen which further exacerbated his symptoms causing him to occasionally use a cane for ambulation.

On examination, plaintiff walked with an antalgic gait. He had a benign essential head tremor as the pain worsened on examination. At rest, the tremor resolved. Dr. Mallik noted that a 2006 MRI of his spine showed degenerative changes at the L4-5 level, but no significant stenosis. Dr. Mallik recommended that plaintiff undergo an MRI and CT scan before making his final recommendations. (R. 314-15.)

An October 16, 2009 CT of plaintiff's lumbar spine showed scant anterolosthesis. There was no fracture or focal bone lesion to sacrum/coccyx. (R. 325.) An October 16, 2009 MRI of plaintiff's lumbar spine revealed L5-S1 scant anterolisthesis. There was no neurocompression. There was L4-5 scant retrolistheses. The pseudodisc gently encroached upon the dural sac, greater on the left. (R. 326.)

**Psychological Impairments.**

Marc E.W. Miller, Ph.D. On January 9, 2008, Dr. Miller, a neuropsychologist, performed a psychological evaluation at the request of the Bureau of Disability Determination. (R. 237-40.) Cleland reported that since his 2005 spine injury, he had experienced anxiety, depression, and moodiness. He had a tendency to withdraw. He denied having any suicidal attempts or active thoughts, although he had current passive thoughts. He attended family counseling once per week at Family Focus with his foster children.

On mental status examination, plaintiff was cooperative and friendly. He indicated pain behaviors during the examination. Eye contact was good. On a scale of 1 to 10, he rated his depression as a 5 or 6. He reported experiencing a great deal of

anxiety. His energy level was poor due to fatigue and sleep deprivation. His sleep was disrupted by worrying and pain. He reported occasional anxiety attacks, and he suffered from claustrophobia. He reported agitation and irritability.

Cleland was oriented in all four spheres. He could recall 2 out of 3 items in a period of 5 minutes. He could recall 4 numbers forward and 3 in reverse. He reported problems with concentration and short term recall. He had difficulty finishing tasks and reading.

Dr. Miller concluded that Cleland's cognitive abilities to understand, remember, and carry out one- and two-step instructions were not impaired. His ability to interact with co-workers, supervisors, and the public indicates mild impairment due to his anxiety and depression. His anxiety mildly to moderately impaired his ability to maintain attention and concentration. His anxiety and depression moderately impaired his ability to deal with stress and pressure in the work setting. His ability to persist and complete tasks was mildly to moderately impaired. Dr. Miller diagnosed pain disorder; dysthymic disorder, moderate; and a generalized anxiety disorder, moderate. He assigned a Global Assessment of Functioning ("GAF") score of 55.

R. Keven Goeke, Ph.D. On February 7, 2008, Dr. Goeke, a psychologist, completed a psychiatric review technique and mental residual functional capacity assessment. (R. 241-57.) Dr. Goeke concluded that plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate

difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.

Dr. Goeke opined that plaintiff was not significantly limited with respect to understanding and memory. He was moderately limited in his abilities to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff had no significant limitations with respect to social interaction. With respect to adaption, plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting. Dr. Goeke summarized his findings:

> Clt is 47 years old alleging physical issues and depression. Clt has a GED and some college. Past work in construction and as a property mgr. No hx of psych tx beyond current family therapy for his foster kids. Clt's family doctor recently placed him on Ativan for anxiety. Clt reports increasing symptoms due to pressures of financial issues, pending home loss, and guilt over his inability to work. He still tries to assist with tasks around the home but has abandoned many interests due to his physical concerns.

> Clt can concentrate and persist on routine tasks of limited duration. He could only recall 4 digits forward and 3 backward, which is below average. He recalled 2 of 3 items after a delay. He used simple sentences to respond to questions and appeared to be in pain, which he reports decreases his focus such as when he reads.

> Clt can relate to others in public and private without difficulty. Clt was appropriate and cooperative at CE. He reports a good relationship with wife and stepkids. He does attend church.

> Clt can adapt to changes in the environment when introduced gradually. He could handle a set routine where he does not have strict time or production demands.

Psych allegation is credible in nature but not severity. CE in 1/08 is given weight since the findings of this report are consistent with overall functioning and other medical evidence in file.

(R. 257.)

### **Administrative Law Judge's Findings.**

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.      The claimant has not engaged in substantial gainful activity since December 13, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments within the meaning of the Act, regulations, SSR 96-3p and Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985): low back pain, degenerative disc disease; osteoarthritis of the lumbar spine; obesity; dysthymia; and generalized anxiety disorder (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (2) CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand or walk for 2 hours in an 8 hour day; he can sit for 6 hours in an 8 hour day; he requires the option to use a cane for ambulation; he many never climb ropes, ladders, or scaffolds; he may not work at unprotected heights or around dangerous moving machinery; and he may do only simple, 1 to 3 step repetitive tasks in a routine work environment.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 25, 1960, and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 13, 2005, though the date of this decision (20 CFR 404.1520(g)).

(R. 10-18.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"

*Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir.

1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v.*

*Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- Plaintiff meets or equals Listing 1.4(A). Plaintiff argues that the

  administrative law judge's conclusion that he did not meet or equal Listing

  1.04 is not supported by the medical evidence. Plaintiff relies on an October

  16, 2009 CT of the lumbar spine that revealed L5-S1 status post posterolateral

  bone fusion and scant anterolisthesis. A October 16, 2009 MRI revealed L5-S1

  scant anterolisthesis, status-post bone fusion and laminectomy, L4-5 scant

  retrolisthesis, and pseudodisc gently encroaching upon the dural sac, greater

  on the left. Plaintiff had a long history of low back pain with radiation into

  the left leg and thigh. Examinations revealed muscle spasms, positive straight

  leg raising on the left, decreased strength of the extensor hallusci longus

  muscle and left hamstring motor strength, left-sided weakness, and

  diminished ankle reflexes and ankle jerks. Plaintiff's gait also favored the left

  side, and he used a cane for ambulation. Plaintiff maintains that these

  findings are sufficient to demonstrate that plaintiff meets Listing 1.04(A).

Plaintiff further argues that the administrative law judge failed to consider the effects of obesity with respect to either meeting or equaling this listing. Plaintiff maintains that the administrative law judge improperly disregard this aspect of his evaluation of plaintiff's obesity and his equivalence under the listing.

- The administrative law judge failed to include the treating physician's limitations in his hypothetical question to the vocational expert. Plaintiff maintains that the administrative law judge did not properly summarize Dr. Wilson's medical source statement. The administrative law judge neglected to include additional limitations identified by Dr. Wilson including restrictions concerning lifting, standing/walking, and sitting. The administrative law judge failed to explain why Dr. Wilson's opinion was not adopted in full. Plaintiff contends that the residual functional capacity assessment formulated by Dr. Wilson does not meet the requirement of sedentary work. In particular, Dr. Wilson limited Cleland to sitting for four hours a day and standing/walking for four a days. This restriction is not consistent with the requirements of sedentary work. Plaintiff argues that testimony from a vocational expert is necessary to determine if work would still be available to plaintiff given these additional limitations.

- A subsequent finding of disability is new and material evidence warranting remand. Plaintiff argues that he developed no new impairments between the

date of the hearing and the date of disability. There does not appear to be a worsening of his condition after the administrative law judge's denial. His award of benefits results in a conflict between the denial and subsequent approval of the benefits. A subsequent allowance of benefits constitutes new and material evidence warranting remand under sentence six when the award of benefits is in close proximity to an earlier denial of benefits.

**Analysis.** Plaintiff maintains that he meets or equals Listing 1.04, which provides in pertinent part:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
. . .
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Pt. 404, Subpt. P, App. 1. Here, there is no evidence of nerve root compression, and plaintiff does not meet the requirementso 1.04A as a result. With respect to 1.04C, plaintiff has not shown that he has an inability to ambulate effectively, as deined in 1.00B2b, which states:

b. What We Mean by Inability to Ambulate Effectively

16

     (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

     (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App. 1.   Although plaintiff has at times used a cane for ambulation, he has not required hand held assistive devices that limit the functioning of both upper extremities, such as a walker, two crutches or two canes. As a result plaintiff does not meet or equal Listing 1.04C.

     Plaintiff also argues that his ability to ambulate was impacted his obesity. In his opening statement, however, plaintiff's counsel does not identify obesity as having an impact on plaintiff's physical impairments:

     Mr. Cleland's history is significant for chronic pain. The Claimant is status-post remote [L5-S1] fusion. Claimant reinjured his back in December '05. February 2006 MRI shows retrolisthesis at L4-5 and

anterolisthesis at L5-S1. Physical exam has revealed positive straight-leg raising. More recent MRI and CAT scan again shows retrolisthesis and anterolisthesis as of November '09. A second back surgery is set to be scheduled. Other diagnosis include . . . blood pressure and hearing loss. In September '07, the Claimant was seen for what is described as a missed heartbeat. Testing was normal. Psych eval provides a diagnosis of pain disorder, dysthymic disorder, and anxiety disorder. Mr. Cleland complains of crying spells, fatigue, and poor sleep. We argue the Claimant's conditions combine to render him disabled.

(R. 27.) Plaintiff also does not point to any treatment notes reflecting the impact of his obesity on his physical condition. Plaintiff's counsel did not ask the medical expert any questions concerning plaintiff's obesity, and the medical expert did not discuss obesity in his testimony. The administrative law judge identified obesity has a severe impairment. With respect to the Listing 1.04, the administrative law judge stated that plaintiff's "back pain, degenerative disc disease, and arthritis do not compromise the spinal cord or nerve root and the claimant is able to ambulate effectively. Therefore the claimant does not meet or equal the requirements for listing 1.04." (R. 11.) The administrative law judge also properly considered plaintiff's obesity:

> Regarding the claimant's obesity, effective October 25, 1999, medical listing 9.09 (obesity) was deleted from Appendix 1, Subpart P of Part 404 of the Code of Federal Regulations (listing of impairments). Therefore, the undersigned considered what effect the claimant's obesity, by itself and in combination with other impairments, has on [his] ability to perform daily living and work activities (See Federal register: August 4, 1999 (Volume 64, Number 163, pages 46122-46129)). The claimant testified he was five feet 9½ inches tall and weighed 225 pounds at the time of the hearing, which is obese.

(R. 15.) As a result, there is substantial evidence supporting the administrative law judge's decision that plaintiff did not meet or equal Listing 1.04.

Accuracy of Hypothetical Given Vocational Expert: Legal Standard.  Plaintiff argues that the Administrative Law Judge's hypothetical to the vocational expert was not supported by substantial evidence because it failed to include all the limitations identified by Dr. Wilson.

In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination.  That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account.  20 C.F.R. § 416.945.  It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].'  *Varley,* 820 F.2d at 779;  *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)."  *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a  vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities.  The facts in this hypothetical are the administrative law judge's residual functional capacity findings.  The administrative law judge must accurately state each limitation that affects the claimant's ability to work.  If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the  vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits.  *Howard,* 276 F.3d at 240-42.  If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is

error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge. 276 F.3d at 242.

Accuracy of Hypothetical Given Vocational Expert: Discussion. With respect to Dr. Wilson, the administrative law judge stated:

> Dr. Deborah Wilson, the claimant's primary care doctor, submitted a medical source statement dated March 19, 2009, in which she stated the claimant had degenerative disc disease in his back and degenerative joint disease in his knees. She opined he was able to occasionally balance and never climb, stoop, crouch, kneel or crawl; he required breaks at approximately 2 hour intervals, and he had severe pain and was on high dose chronic opioid medication. She stated the claimant's upper extremities were not affected by his impairments. She reported that he used a cane, although he had apparently received it from another doctor. She reported he had tried using a brace and a TENS unit but they provided no relief (Ex 9F/1-2). Dr. Wilson's opinion is consistent with the sedentary residual functional capacity provided herein.

(R. 15.) The administrative law judge concluded that plaintiff retained

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand or walk for 2 hours in an 8 hour day; he can sit for 6 hours in an 8 hour day; he requires the option to use a cane for ambulation; he may never climb ropes, ladders, or scaffolds; he may not work at unprotected heights or around dangerous moving machinery; and he may do only simple, 1 to 3 step repetitive tasks in a routine work environment.

(R. 12.) Dr. Wilson's assessment of plaintiff's physical capacity, however, differed from the administrative law judge's findings. Dr. Wilson noted that plaintiff could occasionally 25 pounds and frequently lift 10 pounds; the limitations by the administrative law judge were *more* restrictive. Dr. Wilson opined that plaintiff could stand and/or walk for 4 hours in an 8 hour day, but the administrative law judge

concluded he could only do so for 2 hours. Dr. Wilson concluded that plaintiff could sit for only 4 hours in an 8 hour day. The administrative law judge concluded that plaintiff could do so for 6 hours. The administrative law judge, as indicated by Dr. Wilson, concluded that plaintiff required the option to use a cane. Although Dr. Wilson's limitation with respect to plaintiff's ability to sit was more restrictive than the administrative law judge's finding, the administrative law judge's conclusion that plaintiff could sit for up to 6 hours in an eight-hour day is supported by substantial evidence in the record. Dr. McCloud, a state agency physician, opined that plaintiff could sit for up to six hours in an eight-hour day. (R. 224.)

Remand for New and Material Evidence. When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review. *Id.* Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits. *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996). A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge. *Id.*; *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken
> before the [Commissioner], but only upon a showing that there is
> new evidence which is material and that there is good cause for the
> failure to incorporate such evidence into the record in a prior
> proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). It is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.' *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988)." *Id.* Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Secretary of Health & Human Services*, 727 F.2d 551, 554 (1984)(per curiam). *Id.* Merely cumulative evidence does not establish good cause for a remand. *Borman v. Heckler*, 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980). The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge. *Id.*, citing, *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff seeks remand based on a subsequent finding that he was disabled. Plaintiff has not provided the evidence upon which the subsequent finding of disability

was based. Consequently, plaintiff has not met his burden of showing new and material evidence. "Under sentence six, the mere existence of the subsequent decision in [plaintiff's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding. A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." *Allen v. Commissioner of Social Sec.*, 561 F.3d 646, 653 (6th Cir. 2009.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


        s/Mark R.  Abel         
       United States Magistrate Judge